COURT OF APPEALS
DECISION
DATED AND FILED

September 26, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1812-CR**

Cir. Ct. No. **2016CF489**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARK A. KUSTERS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Wood County: GREGORY J. POTTER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in Wis. Stat. Rule 809.23(3).**

¶1    PER CURIAM.  A jury found Mark Kusters guilty of first-degree reckless homicide for the shooting death of Richard Flynn.  Kusters seeks a new trial on the ground that the circuit court erred when it denied his request for a jury instruction on self-defense.  We assume, without deciding, that the court erred in declining to instruct the jury on self-defense.  However, we conclude that the assumed error was harmless.  Therefore, we affirm.

## BACKGROUND

¶2    Richard Flynn died from a shotgun wound early in the morning of September 15, 2016, and the State charged Kusters with first-degree intentional homicide for Flynn's death.  A jury trial ensued.  We provide a detailed account of the evidence presented at trial below.  Briefly, Flynn had recently had a one-night stand with Kusters' wife Trina.[1]  At around 12:30 on the night of the shooting Trina saw Flynn looking in a rear window and the front door window of Kusters' residence while Kusters and Trina were inside sitting on their couch.  Kusters went to the bedroom and got a loaded shotgun, went out the front door, and saw Flynn outside near the end of the residence.  Trina and Kusters were the only witnesses to what happened next.  Trina testified that she heard Kusters fire the gun at Flynn.  Kusters testified that he held the gun pointed down at all times and that, when he was outside and saw Flynn, Trina grabbed his collar and pulled him and the gun discharged.  Kusters fatally shot Flynn from a distance of forty-five to fifty feet.

¶3    At the close of evidence, Kusters requested a self-defense jury instruction.  The circuit court denied the request.  The court gave the jury

---

[1]  Because both Mark Kusters and Trina Kusters share the same last name, we refer to Trina by her first name.

instructions on first-degree intentional homicide and the lesser included offenses of second-degree intentional homicide, first-degree reckless homicide, and second-degree reckless homicide, and on negligent homicide. The court also granted Kusters' request to instruct the jury on accident for all of the homicide offenses except negligent homicide. The jury found Kusters guilty of first-degree reckless homicide. This appeal follows.

## DISCUSSION

¶4    As stated, Kusters argues that the circuit court erred when it denied his request for a jury instruction on self-defense. We assume, without deciding, that the court erred in declining to instruct the jury on self-defense, but we conclude that any such error was harmless. We first summarize the standard of review and applicable legal principles, next review the pertinent testimony at trial, and then explain our harmless error conclusion.

### I. Standard of Review and Applicable Legal Principles

¶5    Self-defense is a privilege to threaten force, or to intentionally use deadly force, against another person to prevent or terminate what the accused reasonably believes is an unlawful interference with his or her person, and the accused cannot use force intended or likely to cause death or great bodily harm unless the accused reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself. WIS. STAT. § 939.48(1) (2017-18).[2]

---

[2] WISCONSIN STAT. § 939.48(1) provides:

(continued)

3

¶6    The Wisconsin pattern jury instruction for self-defense cited by Kusters in his appellant's brief instructs the jury in pertinent part as follows (footnotes omitted):

**Self-Defense**

Self-defense is an issue in this case….

The law of self-defense allows the defendant to threaten or intentionally use force against another only if:

- the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and,

- the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and

- the defendant's beliefs were reasonable.

….

The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to (himself) (herself).

---

A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

**Determining Whether Beliefs Were Reasonable**

> A belief may be reasonable even though mistaken. In determining whether the defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of the defendant's acts and not from the viewpoint of the jury now.

WIS JI—CRIMINAL 801 (footnotes omitted). The pattern jury instructions also indicate that, for the offenses charged here, "The burden is on the state to prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense." ***Id.***

¶7    A circuit court's erroneous failure to instruct the jury on self-defense is subject to the harmless error rule, as codified in WIS. STAT. § 805.18(2). ***State v. Stietz***, 2017 WI 58, ¶61, 375 Wis. 2d 572, 895 N.W.2d 796. The harmless error inquiry raises a question of law that we review de novo. ***Id.***, ¶62. An error is harmless "if it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error." ***Id.***, ¶63 (citation omitted).

## II. Pertinent Trial Testimony

¶8    We relate the following pertinent testimony.

¶9    Trina testified as follows. After Trina told Kusters that Flynn was looking in the front door, she went outside to tell Flynn to get off the property, and Kusters went to get a gun that was loaded because a neighbor had recently told them about a burglary. By the time Trina got outside, Kusters was on the porch with the gun, and Trina heard Kusters cocking and firing the gun. Trina did not recall going to Kusters or grabbing Kusters before he shot Flynn, but she could

5

have grabbed Kusters and caused an injury to his face before he shot Flynn. Flynn had nothing in his hands, and he had no weapons. Flynn was standing near his vehicle parked in the neighbor's driveway when Kusters shot him.

¶10 Trina did not recall telling police after the shooting any of the following: as Kusters was going to the bedroom to get his gun he said, "I'm going to fucking kill him"; once outside Kusters told Flynn, "I'm going to fucking kill you"; Flynn responded, "I don't care because I want your wife"; and Kusters said, "Fuck you," and shot Flynn as Flynn was standing near his vehicle.

¶11 A Wood County Sheriff's Deputy who spoke with Trina at the scene of the shooting testified that Trina made the above-quoted statements as to what Kusters and Flynn said before Kusters shot Flynn. The jury also heard a recording of Trina making these statements. The deputy also testified that Trina told the deputy that Flynn was backing away near the property line with the neighbor's house when Kusters shot him, and that Trina told the deputy that she "pushed and made a hand gesture" to try to get the gun away from Kusters.

¶12 Another Wood County Sheriff's Deputy who spoke with Kusters at the scene of the shooting testified that Kusters told the deputy that there was an individual on his property peering into the windows, and that Kusters "had to do what [he] had to do" or Kusters "did something any—any person would do if somebody was on their property." Kusters told the deputy that he did nothing wrong, that the man Kusters shot had started approaching, and that Kusters did "anything any law abiding citizen would do." Kusters told the deputy that the blood on his face may have come from his wife slapping him.

¶13 A Town of Grand Rapids Police Officer and a State Patrol trooper both testified that Flynn was close to where Flynn's vehicle was parked, about

6

forty-five to fifty feet from where Kusters was standing, when Kusters shot Flynn. Testimony by a forensic pathologist supported the officers' testimony.

¶14    Kusters testified as follows. When Trina told him that Flynn was looking in the back window and was at the front door, Kusters went to the bedroom to get his shotgun, which was loaded because a neighbor had told him about a recent break-in at the neighbor's house. Kusters got the gun because he did not know if Flynn was alone or with someone else, and he did not know what he was going to be facing. As Kusters was walking with the gun towards the front door, he told Trina to call the cops, but Trina said Flynn was in enough trouble already.

¶15    Continuing with Kusters' version of events, he testified that he went outside, could not see anything, and yelled three times, "Get the hell off my property." He then saw Flynn appear from around the corner near the end of the residence, coming towards Kusters. At that point, Trina reached up and grabbed Kusters' collar, scratching his face, and pulled him backwards. The gun discharged when Trina pulled Kusters. Throughout, the gun's safety was off and Kusters' finger was on the trigger; the gun was pointed down and never left Kusters' side; the gun was never raised. Kusters was holding it by his side and he was not looking to kill anyone. Kusters testified that because of a disability he cannot raise a gun without help.

¶16    When asked if Kusters intended to kill Flynn, Kusters testified: "That is something we will never know because the gun discharged before I ever had the opportunity to make that decision … It never came to that point…." Kusters testified that when he took the gun outside he "had intent to protect myself."

7

### *III. Analysis*

¶17    As the above summaries reveal, the pertinent *uncontested* evidence presented at trial showed the following.  In response to Flynn's appearance on his property, Kusters got a loaded shotgun, exited his front door, and placed his finger on the trigger.  Then, while Kusters was on his porch and Flynn was about forty-five to fifty feet away, near his car parked in the neighbor's driveway, Kusters shot the unarmed Flynn.

¶18    Assuming without deciding instructional error, we conclude beyond a reasonable doubt that a rational jury could not have found that, at the moment Kusters shot Flynn, Kusters believed that he needed to prevent or terminate an imminent or actual "unlawful interference with his person," as required by the self-defense privilege.  *See* WIS. STAT. § 939.48(1) ("A person is privileged to threaten or intentionally use force against another for the purposes of preventing or terminating what the person reasonably believes to be an unlawful *interference with his or her person* by other such person…." (emphasis added)).  Therefore, the assumed error in excluding the self-defense instruction was harmless.

¶19    We discern two arguments by Kusters purportedly on the harmless error topic.  First, Kusters argues that the failure to instruct the jury on self-defense was not harmless error because, in Kusters' words, it denied the jury access to the legal "framework" which would have allowed the jury, under a theory of self-defense, to "negate" that Kusters' conduct "created an unreasonable risk" and "showed utter disregard for human life," two of the elements of first-degree reckless homicide.  *See* WIS. STAT. § 940.02(1).  Second, Kusters argues that the error was not harmless because defense counsel "framed" the defense theory as self-defense in his opening statement before trial.  However, both of these

arguments, as Kusters develops them, only go to the issue of whether Kusters was entitled to the self-defense instruction in the first instance, based on the evidence most favorable to Kusters; they do not address whether, had the jury received the self-defense instruction, it might not have convicted Kusters based on the evidence at trial. *See Steitz*, 375 Wis. 2d 572, ¶63. As we have explained, we conclude that it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion, absent the error that we assume.

## CONCLUSION

¶20    For the reasons stated, we conclude that any error in failing to instruct the jury on self-defense was harmless. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.